DEC 9 2024 PM 12:15
RCV'D - USDC G'VILLE SC

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

## UNITED STATES OF AMERICA, ex rel. LATASHA MONIQUE BOYD, Plaintiff
v.
### Defendants:

- **Spartanburg County Sheriff's Department:** Chuck Wright Depty Ezzlarb
- **Spartanburg Police Department:** Michael S. Petrie, J. Walter, K. Renneker, Bobby Mullinax, S. Bojan, John Berry
- **Woodruff Police Department:** Jeremy R. Beauvier
- **Duncan Police Department:** Paul R. Ward Satterfield Gregg A
- **Department of Motor Vehicles:** Kevin A Shwedo
- **Spartanburg Regional Health Care System:** Harold Jones Fuller Jr., Christopher Steven Vega, Donna L. Hussey, Amber Bradley, Cynthia McCurry, Misty M. Steadman
- **District six:** Dr. Darryl F. Owings, Dawn Harris
- **Department of Social Services: Eric Barbare Yvette McClinton** Dana Lyles, Debbie Evans, Brittany Kelley, Robert C. Rhoden III, Jonathan Drew Hammond, Matthew Heacker, KeyArial McDuffie, Melinda Lynn, Allison Brunson, Melina Lynn, Keith King, Rebecca Groundsell, Christian McConnell, Brian Gotses, Trina Ferguson, CW M. Haecher/A. Brunson, D. Dantzler, Cass Elias McCarter, Emma E. Belcher, Anna Duncan
- **Court Report:** Cheryl T. MacMillan, Emily H. Walker
- **Spartanburg Regional:** Dr. Christopher Steven Vega, Dr. Harold Jones Fuller Jr., Donna L. Hussey, Amber Bradley, Misty M. Steadman:
- **Social Security Administration:** Martin O'Malley,  Dr. Caleb Loring,
- **Spartanburg Judges:** M. Todd Thigpen, Vicki Rea Smith, M. Todd Thigpen, Angela J. Moss, Usha J. Bridges, Isaac B. Dickson Jr., Debra A. Mattew, Any W. Cox
- **Derrick Sigismund Wilkey Sr.**

---

## COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT, RICO STATUTES, AND CONSTITUTIONAL RIGHTS

---

### INTRODUCTION

"Plaintiff, Latasha Monique Boyd, initiates this civil action pursuant to the False Claims Act (31 U.S.C. § 3729 et seq.), RICO statutes (18 U.S.C. §§ 1961-1968), and federal constitutional law. This action seeks redress for the submission of fraudulent claims, engagement in racketeering activities, and systemic violations of her constitutional rights by the named Defendants."

### JURISDICTION AND VENUE

1

1. "This Court has jurisdiction under 28 U.S.C. § 1331, as the claims arise under federal statutes, including the False Claims Act (31 U.S.C. § 3732(a)) and the RICO Act (18 U.S.C. § 1964(c)).

2. Venue is proper in the District of South Carolina pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred within this District, and Defendants are located or conduct substantial business within this jurisdiction."

1. **False Claims Act:**

   The Defendants knowingly submitted false claims for payment to the United States government through child welfare programs, improper Social Security disbursements, and fabricated medical claims.

2. **RICO Violations:**

   Defendants engaged in a coordinated enterprise involving coercion, fraud, extortion, and conspiracy to deprive Plaintiff of rights and resources, in violation of **18 U.S.C. § 1962(c)-(d)**.

3. **Constitutional Violations:**

   Defendants violated the Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights through unlawful detention, coercion, and retaliatory actions.

<b>THE ENTERPRISE</b>

1. The Defendants collectively formed an enterprise designed to:

   - Exploit federal programs for financial gain through fraudulent claims.
   - Retaliate against the Plaintiff for attempting to assert her rights.
   - Coerce and control the Plaintiff by manipulating judicial, law enforcement, and medical processes.

2. This enterprise involved:

   - Submission of false documentation and claims by DSS.
   - Unlawful detentions and coercion by law enforcement and medical staff.
   - Facilitating and covering up fraudulent claims by judiciary members acting outside their jurisdiction.

<b>PATTERN OF RACKETEERING ACTIVITY</b>

Defendants engaged in multiple predicate acts constituting racketeering, including:

1. **Fraudulent Claims:** Submission of falsified documents to secure federal funds under Title IV-E Foster Care and other welfare programs.
2. **Coercion and Extortion:** Forced compliance with unlawful orders, such as coerced medical treatments and detention.
3. **Obstruction of Justice:** Retaliation against the Plaintiff for filing complaints and attempting to expose misconduct.

**FACTUAL ALLEGATIONS UNDER THE FALSE CLAIMS ACT, RICO STATUTES, AND CONSTITUTIONAL RIGHTS**

**A. Procedural Violations, Coercion, and Fraud Misconduct and Harassment**

1. **Disruption of Education:**
   - Around the age of **7**, the Plaintiff's education was disrupted due to **misconduct by the Department of Social Services (DSS)**. This interference negatively impacted the Plaintiff's academic growth and development, violating her rights to access education without unwarranted government interference.

2. **DSS Misconduct (2012):**
   - In 2012, DSS employee **Emma E. Belcher** coerced the Plaintiff into signing an order       that created financial hardship, violating constitutional protections under **Crandall v. Nevada, 73 U.S. 35 (1868)**. This action was part of a broader scheme to exploit the Plaintiff's financial situation for improper federal disbursements.

3. **Case No. 073738FX - Speeding (10 mph or less over the speed limit)**

**Details:**

1. **Jurisdiction:** Spartanburg Municipal Court
2. **Statute Violated:** South Carolina Code § 56-5-1520
3. **Incident Date:** March 23, 2012
4. **Deposition Date:** March 30, 2012
5. **Defendant:** Bobby Mullinax
6. **Fine Paid:** $81.00

**Legal Context:**

The Plaintiff was cited for driving in excess of the posted speed limit but not exceeding 10 mph

over the limit. Under South Carolina Code § 56-5-1520, penalties for speeding are categorized as follows:

1. **1–10 mph over:** $15–$25 fine.
2. **11–15 mph over:** $25–$50 fine.
3. **16–25 mph over:** $50–$75 fine.
4. **More than 25 mph over:** $75–$200 fine or up to 30 days in jail.

**Discrepancies/Issues:**

- The citation noted a fine of $81.00, which appears to exceed the statutory range for this violation category.
- South Carolina Code § 56-5-1520 mandates that speeding citations include the rate of speed for which the citation is issued, and any discrepancies or overcharges may indicate procedural irregularities.
- The systemic targeting of marginalized communities.

### 4. Case No. 074257FX - Speeding (More than 25 mph over the speed limit)

**Details:**

1. **Jurisdiction:** Spartanburg Municipal Court
2. **Statute Violated:** South Carolina Code § 56-5-1520
3. **Incident Date:** March 12, 2012
4. **Deposition Date:** March 20, 2012
5. **Defendant:** K. Renneker
6. **Fine Paid:** $445.00

**Legal Context:**

Under South Carolina Code § 56-5-1520, penalties for exceeding the speed limit by more than 25 mph include:

1. **Fine:** $75–$200.
2. **Imprisonment:** Up to 30 days (at the discretion of the court).
3. **Mandatory Speed Notation:** The citation must include the exact rate of speed for which the citation was issued.

**Discrepancies/Issues:**

- The fine imposed ($445.00) far exceeds the maximum statutory limit of $200 for speeding violations over 25 mph.

4

- There is no indication that imprisonment was considered, which raises concerns about procedural consistency in the application of the statute.
- Lack of evidence that the rate of speed was properly documented on the citation, as required by law.
- The systemic targeting of marginalized communities.

### 5. Case No. 042044GB - Failure to Exercise Due Care While Operating a Motor Vehicle

**Details:**

1. **Jurisdiction**: Spartanburg Municipal Court
2. **Statute Violated**: South Carolina Code § 56-5-3230
3. **Incident Date**: February 26, 2013
4. **Deposition Date**: March 8, 2013
5. **Defendant**: John Berry
6. **Fine Paid**: $149.00

**Statutory Context:**

South Carolina Code § 56-5-3230 requires that drivers:

1. Exercise due care to avoid collisions with pedestrians or persons propelling human-powered vehicles.
2. Provide audible signals when necessary.
3. Take proper precautions when observing any child, or an individual who appears confused, incapacitated, or intoxicated.

**Claimed Discrepancies/Issues:**

a. **Ambiguity in Citation**: The Plaintiff was the only vehicle on the road at the time, leaving the specific reasoning for the citation unclear.
b. **Officer's Justification**: There is no evidence of a pedestrian, cyclist, or other individual requiring the Plaintiff to exercise additional care. This raises concerns that the citation may lack a factual basis.
c. **Fine Amount**: The imposed fine of $149.00 appears to exceed standard penalties for such violations, further necessitating clarification.

### 6. Case No. 041790GI - Operating a Vehicle on a Highway Without Registration and License

**Details:**

1. **Jurisdiction:** Spartanburg Municipal Court
2. **Statute Violated:** South Carolina Code § 56-3-110
3. **Incident Date:** October 22, 2013
4. **Deposition Date:** November 19, 2013
5. **Defendant:** S. Bojan
6. **Fine Paid:** $92.00

**Statutory Context:**

South Carolina Code § 56-3-110 requires that all vehicles operated on public highways be properly registered and licensed. Drivers must also maintain valid insurance to comply with state laws.

**Claimed Discrepancies/Issues:**

a. **Valid Registration and License:**
   o The Plaintiff asserts that her vehicle was properly registered and that she held a valid license at the time of the incident.

b. **License Confiscation:**
   o The officer allegedly confiscated her license due to her inability to pay for insurance. This action raises concerns, as insurance-related noncompliance does not automatically void vehicle registration or licensing.

c. **Unjust Citation:**
   o The citation appears to misrepresent the facts, potentially leading to an unjust penalty and undue financial burden.
   o penalty and undue financial burden.

d. **Right to Travel:**
   o The Plaintiff asserts that she was exercising her constitutional right to travel and was not engaged in any commercial activity at the time of the citation. Under such circumstances, registration and licensing requirements are not applicable.

7. **Case No. 4102P0091426 - Driving Under Suspension (Non-DUI, 1st Offense)**

**Details:**

1. **Jurisdiction:** Spartanburg Municipal Court
2. **Statute Violated:** South Carolina Code § 56-1-460

6

3. **Incident Date**: August 26, 2015
4. **Deposition Date**: September 29, 2015
5. **Defendant**: J. Walter
6. **Fine Paid**: $672.08

**Statutory Context:**

Under South Carolina Code § 56-1-460: Operating a vehicle while under suspension (not related to DUI) for a first offense can result in: **Fine**: $300 or imprisonment for up to 30 days.

**Additional Fees**: Administrative fees and possible surcharges may increase the total cost. Any suspension-related penalty must be accompanied by clear documentation of the reason for suspension.

**Claimed Discrepancies/Issues:**

a. **Excessively High Fee:**

   o The Plaintiff was fined $672.08, which is more than double the statutory maximum fine of $300 for a first offense. The additional charges are not itemized, leaving the Plaintiff unable to verify their legitimacy.

b. **Reason for Suspension:**

   o The Plaintiff asserts that the license suspension was not related to a DUI and may have been enforced improperly. The suspension occurred after Plaintiff was unable to make an insurance payment. During a traffic stop, the officer confiscated Plaintiff's driver's license at the scene. Plaintiff believes this action was disproportionate and potentially unlawful, warranting further examination.

c. **Right to Travel:**

   o The Plaintiff asserts that she was exercising her constitutional right to travel and was not engaged in any commercial activity at the time of the citation. Under such circumstances, registration and licensing requirements are not applicable.

d. **Procedural Concerns:**

   o Plaintiff questions the fairness and validity of the citation.

   o Without documentation justifying the suspension and the basis for the fee.

## B. Judicial Misconduct and Systemic Violations

8. **February 8, 2018:**

   o **Incident**: Reduction of charges against Wilkey.

7

- ○ **Details**: Judge Mark Hayes II reduced Wilkey's charges from **kidnapping and domestic violence** to **assault and battery**. The Judge stated that he did not see any reason to take further action, despite clear evidence of the severity of the offenses.
- ○ **Impact**:
  1. This decision emboldened Wilkey, contributing to continued harassment and threats against the Plaintiff.
  2. DSS and law enforcement failed to address the Plaintiff's ongoing safety concerns, further isolating her and exacerbating the abuse she endured.
  3. These actions further empowered individuals like Wilkey to exploit systemic bias within the judicial and law enforcement systems.

9. **Denied Orders of Protection (2018):**
- ○ The Plaintiff filed five orders of protection against ongoing harassment and threats since **2018**.

10. **Obstruction of Justice (September 14, 2018):**
- ○ When attempting to file a legitimate complaint in **City Court**, the Plaintiff was surrounded by three officers who falsely claimed she could not file the complaint. On the following Monday, after reporting this incident to the **Spartanburg County Sheriff's Department**, the Plaintiff was coerced into a mental health facility under false pretenses, obstructing her access to legal recourse.

11. **Unlawful Detention and Coercion (September 17, 2018):**
- ○ The Plaintiff was forcibly taken to **Spartanburg Medical Center Emergency Center** by members of the **Spartanburg County Sheriff's Department**, where she was subjected to coercive and unlawful actions, including:
- ○ **Dr. Christopher Steven Vega, MD:** Authorized or enabled the detention under false pretenses.
- ○ **Donna L. Hussey:** Coerced the Plaintiff into disrobing in her presence, violating her privacy rights and bodily autonomy.
- ○ **Amber Bradley, RN:** Threatened the Plaintiff, stating she would not be allowed to leave unless she took medication against her will.

12. **Fabricated Medical Records and Misdiagnosis:**

- o **Dr. Harold Jones Fuller Jr.:** Submitted false medical records stating the Plaintiff suffered from an "onset psychotic disorder" without conducting a valid diagnostic evaluation.

**13. Threats and Retaliation:**

- o **Misty M. Steadman:** Threatened to involve **DSS** to remove the Plaintiff's child unless she contacted her mother to relinquish custody, despite having no lawful basis for such actions.

**14. Improper Medical Billing:**

- o Medical providers at **Spartanburg Medical Center** billed federal programs for coerced treatments and fabricated mental health diagnoses, constituting fraudulent claims under the False Claims Act.

## C. Financial Exploitation by Spartanburg County School District

**15. Excessive Lunch Fees:**

- o The **Spartanburg County School District** left the Plaintiff's children with unpaid lunch fees ranging from **$566.55 to $600**, creating an undue financial burden on the Plaintiff.
- o These fees accumulated due to systemic neglect, failure to provide adequate notice, and improper management of school lunch programs, despite the Plaintiff's economic hardship and possible eligibility for free or reduced-cost lunch programs under federal guidelines (e.g., National School Lunch Program).

**16. Failure to Apply Federal Aid Properly:**

- o If federal funds were received to subsidize or support student meal programs, the district's failure to ensure proper allocation or management of these resources may constitute a violation of the **False Claims Act** (31 U.S.C. § 3729).
- o The mismanagement of school meal programs could further indicate negligence or improper billing practices, contributing to financial harm against the Plaintiff and her children.

## D. Systemic Impact on Employment, Mental Health, and Financial Stability

**17. Blacklisting and Employment Difficulties:**

- o While actively seeking employment, the Plaintiff faced repeated denials from potential employers, leading her to believe she was **blacklisted**.

9

- These rejections created significant financial hardship, leaving the Plaintiff unable to secure a stable income and contributing to chronic stress and fear for her safety.

**18. Mental Health Diagnosis and Disability Filing (2018)**

- The Plaintiff developed **Chronic Anxiety Disorder** and **Complex PTSD**, stemming from years of harassment, financial instability, and threats to her life. These conditions were further exacerbated by fear of retaliation and ongoing systemic misconduct.
- In an attempt to secure financial stability, the Plaintiff applied for **Social Security Disability benefits**. The **Social Security Administration** referred her to **Dr. Caleb Loring** for evaluation.

**19. Rapid Disability Approval:**

- The Plaintiff was approved for disability benefits within three months of applying. While the approval provided some financial relief, the Plaintiff remains uncertain about the specifics of the evaluation conducted by **Dr. Caleb Loring**, as her interaction with him primarily involved recounting traumatic life events.
- During the evaluation, the Plaintiff disclosed significant events that shaped her mental health, including witnessing the murder of her grandmother on **Valentine's Day.**

**20. Non-Stop Harassment (2018–2024):**

- Beginning on **September 17, 2018,** the DSS initiated relentless harassment under the guise of investigating child abuse claims. **Wilkey**, initiated relentless harassment under the guise of investigating child abuse claims.
- This harassment continued uninterrupted until **May 9, 2024,** despite the lack of credible evidence to support any allegations against the Plaintiff.
- DSS officials repeatedly disrupted the Plaintiff's life, using fabricated evidence, unfounded allegations, and coercive tactics to justify their actions.

**21. Case No. 4102P0031223 - Disorderly Conduct/Public Disorderly Conduct Details:**

1. **Jurisdiction**: Spartanburg Magistrate Court
2. **Statute Violated**: South Carolina Code § 16-17-530
3. **Arrest Date**: September 19, 2019

    4. **Disposition Date**: October 3, 2019

    5. **Defendant**: Michael S. Petrie

    6. **Fine Paid**: $265.23

**Statutory Context:**

South Carolina Code § 16-17-530 defines disorderly conduct as behavior in public that disturbs the peace or endangers others, including:

    1. Public intoxication.

    2. Using obscene or profane language in a manner that could incite violence.

    3. Conduct that breaches public safety or tranquility.

**Claimed Discrepancies/Issues:**

a. **Ambiguity in Allegations:**

    o The Plaintiff asserts that the citation lacks clarity regarding the specific behavior that constituted disorderly conduct. The alleged actions do not appear to align with the statute's outlined offenses.

b. **Excessively High Fee:**

    o The fine of $265.23 exceeds what is typically assessed for disorderly conduct under similar circumstances, raising questions about fairness and consistency in penalty assessment.

c. **Procedural Concerns:**

    o No clear evidence or documentation was provided to substantiate the charge, leaving the Plaintiff unable to verify its validity.

22. **Unlawful Entry and Theft (October 3, 2019):**

    o On this date, **Wilkey** begged the school resource officer to hand over the Plaintiff's apartment keys without her consent. The officer unlawfully complied, and **Wilkey** entered the Plaintiff's apartment, stealing my **disability money**.

23. **Case No. 20190780008450 - Operating a Vehicle Without Registration and Licensing**

**Details:**

    1. **Jurisdiction**: Duncan Municipal Court

    2. **Statute Violated**: South Carolina Code § 56-3-110

    3. **Arrest Date**: October 14, 2019

4. **Disposition Date**: November 8, 2019
5. **Defendant**: Paul R. Ward
6. **Fine Paid**: $232.50

**Statutory Context:**

South Carolina Code § 56-3-110 requires that vehicles engaged in commercial activities on public highways be properly registered and licensed. Non-commercial use of a vehicle while exercising the constitutional right to travel is distinct from statutory requirements applicable to commercial activities.

   **Claimed Discrepancies/Issues:**

   a. **Right to Travel:**

   o  The Plaintiff asserts that she was exercising her constitutional right to travel and was not engaged in any commercial activity at the time of the citation. Under such circumstances, registration and licensing requirements are not applicable.

   b. **Procedural Concerns:**

   o  No evidence or justification was provided to demonstrate that the Plaintiff was engaged in a commercial transaction requiring registration or licensing under South Carolina Code § 56-3-110.

   c. **Excessive Fine:**

   o  The fine of $232.50 appears disproportionately high and unjustified in this context, where the Plaintiff's travel was unrelated to any commercial activity.

**24. Case No. 20190780008449 - Uninsured Motor Vehicle Fee Violation**

**Details:**

1. **Jurisdiction**: Duncan Municipal Court
2. **Statute Violated**: South Carolina Code § 56-10-520
3. **Arrest Date**: October 14, 2019
4. **Disposition Date**: November 8, 2019
5. **Defendant**: Paul R. Ward
6. **Fine Paid**: $440.00

**Statutory Context:**

South Carolina Code § 56-10-520 requires that vehicles operated on public roads either: Be covered by valid liability insurance, or The owner must pay the uninsured motor vehicle fee as outlined by state law. Failure to comply may result in penalties and fines.

**Claimed Discrepancies/Issues:**

a. **Right to Travel:**

   o The Plaintiff asserts that she was exercising her constitutional right to travel, which is distinct from operating a vehicle for commercial purposes. As such, the requirement for liability insurance or payment of the uninsured motor vehicle fee does not apply.

b. **Excessive Fine:**

   o The fine of $440.00 appears excessive, especially given the non-commercial nature of the Plaintiff's travel. Standard fines for this violation typically fall within a lower range unless additional factors are present.

c. **Procedural Concerns:**

   o No evidence was provided to demonstrate that the Plaintiff was engaged in an activity requiring mandatory insurance or payment of the uninsured motor vehicle fee. This raises questions about the validity of the citation and penalty.

**25. Case No. 20190780008448 - Driving Without a License**

**Details:**

1. **Jurisdiction:** Duncan Municipal Court
2. **Statute Violated:** South Carolina Code § 56-1-20
3. **Arrest Date:** October 14, 2019
4. **File Date:** October 16, 2019
5. **Disposition Date:** November 8, 2019
6. **Defendant:** Paul R. Ward
7. **Fine Paid:** $232.50

**Statutory Context:**

South Carolina Code § 56-1-20 prohibits operating a motor vehicle on public highways without a valid driver's license. Penalties typically include fines and, in some cases, additional administrative fees.

13

**Claimed Discrepancies/Issues:**

a. **Right to Travel:**

   o The Plaintiff asserts that she was exercising her constitutional right to travel and was not engaged in any commercial activity. As such, the requirement for a state-issued driver's license does not apply.

b. **Excessive Fine:**

   o The fine of $232.50 appears disproportionately high for this alleged violation, particularly in light of the non-commercial nature of the Plaintiff's travel.

c. **Procedural Concerns:**

   o There is no evidence provided to demonstrate that the Plaintiff was operating a vehicle in a manner requiring licensure under South Carolina Code § 56-1-20. This raises concerns about the validity of the citation and the penalty imposed.

## 26. Bench Warrant Release for Disorderly Conduct/Public Disorderly Conduct

a. **Incident Date:**

   o September 19, 2019

b. **Reason for Arrest:**

   o Plaintiff was arrested pursuant to a bench warrant issued for failure to appear in court on charges related to Disorderly Conduct/Public Disorderly Conduct.

c. **Claimed Issues:**

   o Plaintiff asserts that the circumstances surrounding the bench warrant and subsequent arrest require closer examination for procedural fairness and compliance with due process.

## 27. Case No. 6102P0091338 - Failure to Use Turn Signal

**Details:**

1. **Jurisdiction:** The Town of Woodruff

2. **Statute Violated:** South Carolina Code § 56-5-2150

3. **Incident Date:** October 9, 2019

4. **Disposition Date:** October 28, 2019

5. **Defendant:** SGT J. Beauvier

6. **Fine Paid:** $232.50

**Statutory Context:**

South Carolina Code § 56-5-2150 requires drivers to use turn signals when making turns or changing lanes in order to notify other drivers of their intentions and ensure road safety. Failing to comply with this requirement may result in a citation and associated penalties.

**Claimed Discrepancies/Issues:**

a. **Disproportionate Fine:**

   o The fine of $232.50 appears excessive for a failure-to-signal violation. Typical fines for minor traffic violations like this one are significantly lower, raising questions about fairness and proportionality.

b. **Lack of Evidence:**

   o The Plaintiff asserts that no evidence was presented to demonstrate that failing to use a turn signal caused a hazard or safety risk, as required under the statute's intent.

c. **Procedural Concerns:**

   o There is no documentation to substantiate the claim that the Plaintiff failed to use a turn signal or that the alleged infraction warranted such a high penalty.

**28. Case No. 6102P0091339 - Expired Tag**

**Details:**

1. **Jurisdiction:** The Town of Woodruff
2. **Statute Violated:** South Carolina Code § 56-3-840
3. **Incident Date:** October 9, 2019
4. **Disposition Date:** October 28, 2019
5. **Defendant:** SGT J. Beauvier
6. **Fine Paid:** $232.50

**Statutory Context:**

South Carolina Code § 56-3-840 requires all vehicles operated on public roads to display valid registration tags. A temporary or paper tag is typically issued when a vehicle is purchased, allowing the owner time to secure permanent registration.

**Claimed Discrepancies/Issues:**

a. **Temporary Tag Explanation:**

- o The Plaintiff asserts that the tag in question was a paper tag left on the vehicle at the time of purchase. Temporary tags are issued to allow a grace period for obtaining permanent registration and should not be treated as expired unless outside the allowable timeframe.

b. **Disproportionate Fine:**

- o The fine of $232.50 appears excessive for this type of violation, particularly when the vehicle was still within the expected temporary registration period.

c. **Lack of Clarity in Citation:**

- o The citation does not clarify whether the temporary tag was outside its valid period or if there was an error in verifying its legitimacy.

### 29. Case No. 6102P0091336 - Failure to Change Address

**Details:**

1. **Jurisdiction:** The Town of Woodruff
2. **Statute Violated:** South Carolina Code § 56-3-840
3. **Incident Date:** October 9, 2019
4. **Disposition Date:** October 28, 2019
5. **Defendant:** SGT J. Beauvier
6. **Fine Paid:** $232.50

**Statutory Context:**

South Carolina Code § 56-3-840 requires vehicle owners to notify the Department of Motor Vehicles (DMV) of an address change within a specified period. Failure to update the DMV with a current address can result in a citation and fines.

**Claimed Discrepancies/Issues:**

a. **Recent Move and Lack of Notification:**

- o The Plaintiff had recently moved into her apartment and asserts that the citation was issued prematurely, without allowing sufficient time for her to update her address with the DMV.

b. **Improper Use of UCC Financial Statement:**

- o The officer allegedly referred to the Plaintiff's UCC financial statement to determine her previous address, which is not the intended purpose of such a

16

document. This raises concerns about the citation's validity and the officer's procedural actions.

   c. **Disproportionate Fine:**

      o The fine of $232.50 is excessive for a minor administrative issue like failing to update an address, particularly given the Plaintiff's circumstances of just having moved.

## E. Targeting and Stalking in Marginalized Communities

### Systemic Targeting by Law Enforcement

1. **Pattern of Harassment in Marginalized Communities:**

   a. Defendant asserts that law enforcement engaged in systemic targeting and stalking within marginalized communities, disproportionately subjecting individuals, including Defendant, to surveillance and harassment.

   b. This practice violates the **Equal Protection Clause of the Fourteenth Amendment** by creating a discriminatory impact on specific communities without legitimate justification.

### Violation of Constitutional Protections

1. **Fourth Amendment Violation:**

   a. The stalking and surveillance of marginalized communities constitute an unreasonable search and seizure, violating Defendant's **Fourth Amendment** rights.

   b. Law enforcement's actions lacked probable cause and were conducted with discriminatory intent, further infringing upon Defendant's constitutional protections.

2. **Fourteenth Amendment Violation:**

   a. The disproportionate focus on marginalized communities reflects a **pattern of discrimination**, violating the Equal Protection Clause.

   b. Defendant was denied equal treatment and subjected to heightened scrutiny based on her association with these communities, further undermining her rights.

## F. Railroading by DSS and Law Enforcement:

1) **Violation of Constitutional Rights**

a. Plaintiff has been subjected to ongoing harassment by DSS and local law enforcement.

b. A specific incident involved the removal of Plaintiff's children following charges of public disorderly conduct, despite there being no evidence or allegations of abuse towards the children. At the time, Plaintiff's son was in the care of his father, **Wilkey**, and was later attacked by **Wilkey's family dog**. Following the attack, **DSS** allegedly misrepresented the facts of the incident alleging abuse on my part, it was just an unlawful arrest of public disorderly conduct, which ultimately led to the unjust removal of Plaintiff's children from her custody. Plaintiff contends that this removal was unwarranted and based on false or misleading information.

## 2) Denial of License to Carry Firearm

a. Plaintiff completed a state-approved **firearms training course** to meet the legal requirements for obtaining a license to carry a concealed weapon.

b. The training was pursued out of necessity due to the **ongoing abuse by Wilkey** and Plaintiff's inability to obtain protection through other legal means, including multiple denied requests for orders of protection.

c. After completing the course, Plaintiff submitted all necessary documentation to the **South Carolina Law Enforcement Division (SLED)** for the issuance of a license to carry.

d. Despite meeting the state's statutory requirements and having no felony convictions or allegations of child abuse, Plaintiff's application was denied by SLED.

e. SLED cited the need for a **favorable recommendation from the Spartanburg County Sheriff's Office** as a basis for the denial. Plaintiff asserts that this additional requirement was arbitrary and disproportionately burdensome, violating her rights under state and federal law.

f. Plaintiff believes that the denial of her license to carry was unjustified and rooted in systemic bias and misuse of authority by local law enforcement agencies.

g. As a result of the denial, Plaintiff has been left without lawful means to protect herself from ongoing threats and abuse, further exacerbating her vulnerability and deprivation of her constitutional rights.

## 3) Infringement on Plaintiff's Right to Travel

a. Plaintiff asserts that the targeting and penalization for exercising her **right to travel** without engaging in commercial activities infringes upon her **constitutional rights**.

b. These actions reflect a systemic misuse of power by local law enforcement, creating significant burdens on Plaintiff's ability to live without unjust interference.

c. **Legal Basis:**The **right to travel**, as recognized in constitutional jurisprudence, includes the freedom to use public roads for private, non-commercial purposes without undue burdens. Efforts to penalize Plaintiff under the guise of motor vehicle regulations constitute an infringement upon this fundamental right.

## 4) Systemic Misconduct by Defendants

### a. Fabrication of Charges and Misapplication of Regulations:

- Defendants have engaged in a pattern of fabricating charges and misapplying motor vehicle regulations, including citations for lack of registration, licensing, and insurance.
- These actions have created undue financial hardship for Plaintiff and entrapped her in a cycle of dependency and exploitation.

### b. Targeting for Financial Gain and Harassment:

- This systemic targeting appears to serve a broader strategy of harassment and **unjust enrichment**, whereby Defendants exploit Plaintiff through fabricated legal obligations.
- The issuance of these citations and other penalties serves no legitimate public safety purpose and instead reflects a calculated effort to harm and control Plaintiff.

## 30. Case No. 2024A4220100012 - Child-Related Legal Matter (Unlawfully Placing a Child at Risk of Harm or Abandonment)

**Details:**

1. **Jurisdiction**: Spartanburg General Sessions Court
2. **Statute Allegedly Violated**: South Carolina Code § 63-5-70
3. **Arrest Date**: May 10, 2024
4. **Parties**: Gregg A. Satterfield and Megan Lynn Helton
5. **Payment Status**: Pending

**Statutory Context**:

South Carolina Code § 63-5-70 criminalizes the act of placing a child at unreasonable risk of

harm, affecting their life, physical or mental health, or safety. Violations of this statute may result in significant legal penalties, including fines and imprisonment.

**Claimed Discrepancies/Issues:**

a. **Fabrication of Evidence:**

   o The Plaintiff asserts that DSS officials and law enforcement deliberately fabricated evidence by exaggerating a minor scratch into a severe cut. This intentional misrepresentation of facts was used to justify unwarranted legal action.

b. **Pattern of Targeting:**

   o The Plaintiff believes this is part of a broader, deliberate effort by DSS and law enforcement to target her family. By exaggerating minor incidents, they aim to portray her as neglectful, undermining her parental rights and exploiting the situation for financial gain under state reimbursement programs.

c. **Lack of Due Process:**

   o The charges were filed without sufficient investigation or credible evidence, violating the Plaintiff's right to fair treatment under the law.

d. **Emotional and Financial Harm:**

   o The baseless allegations have caused severe emotional distress, financial instability, and further alienation from her children.

   o **Judicial Misconduct and Systemic Violations**

**31. Denied Orders of Protection:**

   o These were repeatedly denied by Judges **Angela J. Moss, Usha J. Bridges**, and **Debra A. Mattew** in 2023, despite credible evidence of harm and imminent danger.

   o The denial of these orders left the Plaintiff vulnerable to continued harassment and threats, and a Malicious prosecution, violating her right to seek protection under the law.

**32. Excessively High Bond (Isaac B. Dickson Jr.):**

   o Judge **Isaac B. Dickson Jr.** imposed an excessively high bond against the Plaintiff based on false allegations, demonstrating a deliberate effort to trap her in jail and obstruct her ability to defend herself.

- o This action constitutes an abuse of judicial discretion, aimed at punishing and intimidating the Plaintiff rather than ensuring justice.
- o **Violations of the False Claims Act (31 U.S.C. § 3729 et seq.)**

1. **Fraudulent Claims for Federal Disbursements:**
   - o DSS and judicial officials submitted falsified affidavits to justify the removal of the Plaintiff's children, enabling improper federal payments under child welfare programs (e.g., Title IV-E).

2. **Alteration of Social Security Records:**
   - o DSS employees altered payee information for Social Security benefits, redirecting funds intended for the Plaintiff's children without due process or legal justification.
   - o Judges **Vicki Rea Smith, Angela J. Moss**, and **M. Todd Thigpen** signed orders based on fabricated evidence, resulting in fraudulent disbursements from federal agencies.
   - o **Key Issues with the Transcript**

3. **Altered or Misplaced Content**
   - o The placement of certain statements within the transcript does not reflect the actual timeline of events. For example:
     1. **Drew Hammond,** the GAL's attorney, questioned me about my address during the initial appearance on **June 24, 2024,** at 2:00 p.m., not during the merits hearing on **July 18, 2024,** as indicated in the transcript.
   - o Statements I made, such as my request for the judge's **anti-bribery statement, foreign registration, bond, and oath,** were inaccurately documented or omitted entirely on **page 4.**

4. **Fraud Upon the Court**
   - o The actions of the Defendants, including court officials and Drew Hammond, demonstrate a coordinated effort to manipulate the judicial record.
   - o Specific instances include:
     1. Alterations in the transcript to fabricate events and align them with a false narrative.

2. Deliberate misrepresentation of facts to undermine the integrity of the judicial process.

5. **Chain of Custody Concerns**

   o The transcript was not completed by the original court reporter, **Cheryl T. MacMillan,** who recorded the proceedings. Instead, it was completed by **Emily H. Walker.** This discrepancy raises significant concerns about the potential for inaccuracies or intentional tampering.

6. **Professional and Ethical Violations**

   o Court reporters are bound by ethical standards to ensure transcripts are a true and accurate reflection of court proceedings. The involvement of a secondary party who was not present during the hearings breaches these professional obligations.

33. **Refusal to Provide Judicial Bonds and Oaths (Any W. Cox):**

   o When the Plaintiff requested the **bond and oath of office** for judicial accountability, Judge **Any W. Cox** refused to provide them, claiming they were unavailable.

   o This refusal violates the Plaintiff's right to ensure that officials are acting within the bounds of their authority and upholding their sworn obligations under the Constitution.

## I.  Violations of the RICO Statutes (18 U.S.C. §§ 1961-1968)

❖ **Enterprise and Systemic Exploitation by Defendants**

Plaintiff asserts that Defendants, including **DSS, District Six, law enforcement agencies, medical providers,** and **judicial officers,** collectively formed an enterprise with a shared purpose of exploiting federal programs, suppressing Plaintiff's legal rights, and financially destabilizing her as part of a coordinated scheme to extort and control her.

This enterprise operated with the following objectives:

1. **Exploitation of Federal Programs**: Misuse of federal funds and resources intended for public welfare, diverting them to perpetuate corrupt practices.

2. **Suppression of Legal Rights**: Coordinated actions to intimidate Plaintiff and obstruct her access to fair legal proceedings, including wrongful arrests, baseless accusations, and denial of legal protections.

3. **Financial Destabilization**: Systemic targeting of Plaintiff through fabricated charges, excessive fines, and burdensome legal and procedural hurdles, designed to create undue financial hardship.

Such conduct constitutes a pattern of **racketeering activity** under the **RICO Act (18 U.S.C. § 1961)** and a violation of Plaintiff's constitutional and statutory rights. Plaintiff alleges that Defendants acted under color of law to advance their shared interests at Plaintiff's expense, furthering corruption and exploitation.

### 34. Pattern of Racketeering Activity:

The Defendants engaged in multiple predicate acts, including:

- **Fraud (18 U.S.C. § 1341):** Submission of falsified affidavits and medical records.
- **Extortion and Coercion (18 U.S.C. § 1951):** Threats to withhold custody of the Plaintiff's child unless she complied with coercive demands.
- **Obstruction of Justice (18 U.S.C. § 1503):** Retaliatory detention of the Plaintiff to suppress her legal complaints.
- **Violations of Constitutional Rights**

## II.     RICO Claims (18 U.S.C. §§ 1961-1968)

**Overview of RICO**

The **Racketeer Influenced and Corrupt Organizations Act (RICO)** prohibits individuals or entities from conducting or participating in an enterprise through a pattern of racketeering activity. A RICO claim requires the plaintiff to demonstrate:

1. **Existence of an Enterprise:** A group of individuals or entities associated together for a common purpose.
2. **Pattern of Racketeering Activity:** At least two predicate acts within 10 years (e.g., fraud, extortion, obstruction of justice).
3. **Connection Between Acts and Enterprise:** The predicate acts must further the enterprise's illegal purpose and directly harm the plaintiff.

**RICO Argument**

1. **Identifying the Enterprise:**
   - Defendants, including DSS, District Six, law enforcement, judicial officers, and medical providers, formed an enterprise with a common purpose to:

23

- Exploit Title IV-E funding through fraudulent means.
- Suppress Plaintiff's legal rights.
- Financially destabilize Plaintiff for their benefit.

2. **Predicate Acts Under RICO (18 U.S.C. § 1961):**
   - **Fraudulent Misuse of Title IV-E Funds:**
     - DSS allegedly submitted false reports to justify removing Plaintiff's children, creating a pretense for securing federal funds under Title IV-E.
     - This constitutes wire fraud (18 U.S.C. § 1343) or mail fraud (18 U.S.C. § 1341) if electronic or postal communications were used to facilitate the fraudulent claims.
   - **Extortion (18 U.S.C. § 1951):**
     - Imposing fabricated legal fines and penalties created financial hardship, coercing Plaintiff into compliance with unjust demands.
   - **Obstruction of Justice (18 U.S.C. § 1503):**
     - Judicial officers allegedly conspired to suppress Plaintiff's rights by dismissing valid claims or denying protection orders without due process.

3. **Pattern of Racketeering Activity:**
   - The predicate acts were not isolated incidents but part of a coordinated pattern of activity aimed at financial exploitation, suppression of rights, and maintaining control over Plaintiff's life.

4. **Harm to Plaintiff:**
   - These actions directly harmed Plaintiff by:
     - Creating financial instability.
     - Depriving her of custody and parental rights.
     - Subjecting her to emotional distress and systemic harassment.

## III.     False Claims Act (31 U.S.C. § 3729) and Title IV-E Fraud

**Overview of the False Claims Act**

The False Claims Act (FCA) holds entities liable for knowingly submitting false claims for payment to the federal government. To establish a claim under the FCA, a plaintiff must show:

1. **Submission of a False Claim:** Defendants knowingly submitted or caused the submission of false claims to the government.

24

2. **Materiality:** The false claim was material to the government's payment decision.

3. **Intent:** The claim was submitted with actual knowledge, deliberate ignorance, or reckless disregard for its truth or falsity.

### How Title IV-E Fraud Aligns with FCA Violations

1. **Exploitation of Title IV-E Funds:**
   o **Title IV-E of the Social Security Act** provides federal funding to assist states in providing foster care and adoption services. Eligibility requires that child removal and placements are justified under federal guidelines.
   o DSS allegedly fabricated evidence or exaggerated circumstances to justify removing Plaintiff's children, thereby qualifying for federal reimbursements under Title IV-E.
   o Submitting these false claims to obtain funding violates **31 U.S.C. § 3729.**

2. **Specific False Claims Submitted:**
   o DSS may have submitted:
     - False reports regarding the necessity of removing Plaintiff's children.
     - Fabricated documentation of efforts to prevent removal, a requirement for Title IV-E eligibility.
     - Exaggerated or falsified case management records to inflate federal reimbursements.

3. **Materiality of False Claims:**
   o The fraudulent reports were material because they influenced the federal government's decision to release funds under Title IV-E.

4. **Intent to Defraud:**
   o DSS and other state actors knowingly submitted these claims to secure federal funding, acting with at least reckless disregard for their falsity.

### RICO Case Law

1. **H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229 (1989):**
   o A "pattern of racketeering activity" requires continuity and a relationship between predicate acts. Your allegations of repeated fraudulent claims, judicial interference, and financial exploitation align with this standard.

2. **Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985):**

- o RICO applies broadly to private individuals who suffer harm from enterprise misconduct, not just organized crime.

**False Claims Act Case Law**

1. **United States ex rel. Hendow v. University of Phoenix, 461 F.3d 1166 (9th Cir. 2006):**
   - o Demonstrates how false certifications of compliance with federal funding requirements can violate the FCA.

2. **United States v. Science Applications International Corp., 626 F.3d 1257 (D.C. Cir. 2010):**
   - o Materiality under the FCA requires that false claims significantly influence the government's funding decision.

### 34. "Misuse of Title IV-E Funds"

- The Defendants, particularly DSS officials, engaged in a pattern of fraud under **Title IV-E of the Social Security Act** by fabricating evidence and falsely claiming federal reimbursements for foster care and child removal cases.

These actions included:

1. Removing the Plaintiff's children under false pretenses without valid judicial determinations.
2. Failing to provide evidence of "reasonable efforts" to prevent removal as required under Title IV-E criteria.
3. Submitting false documentation to the federal government to secure reimbursements for ineligible cases.

### 35. "Violation of Family Integrity and Due Process"

- The Defendants' actions violated the Plaintiff's constitutional right to family integrity by wrongfully removing her children for financial gain under Title IV-E programs. These actions deprived the Plaintiff of due process and caused significant emotional, financial, and familial harm.

### Connection to Broader Discriminatory Practices

- The systemic targeting of marginalized communities is consistent with the discriminatory actions of Law enforcement, SCDSS and the Family Court, creating a pattern of unequal treatment and harassment that violated Defendant's rights.

- These practices perpetuate systemic inequalities and undermine trust in public institutions, further compounding the harm caused to Defendant and her family.

   36. **Entrapment and Coercion Leading to Financial Dependency**

- **Systemic Entrapment by DSS and Law Enforcement**:
   - The Plaintiff asserts that the Defendants, including DSS and law enforcement, created conditions that entrapped her in a cycle of financial and emotional dependency on an individual who is impulsively violent and controlling.
   - Through fabricated allegations, unjust enforcement actions, and deliberate targeting, the Plaintiff was systematically stripped of her autonomy and resources, leaving her reliant on a person who exacerbates her distress and insecurity.

- **Exploitation of Plaintiff's Vulnerability**:
   - DSS and other officials manipulated circumstances to undermine the Plaintiff's independence, ensuring her dependence on a heavy-controlling individual. This dependency subjected her to emotional abuse, financial control, and repeated acts of impulsive violence.
   - The targeting by Defendants appears to have been designed to isolate the Plaintiff, exploiting her vulnerability for their financial and institutional gain.

2. **Theft of Court Evidence (September 2024)**:
   - In **September 2024**, **Wilkey** unlawfully entered the Plaintiff's home again and stole critical **court evidence** related to ongoing legal proceedings. This act of theft significantly obstructed the Plaintiff's ability to present her case effectively, further violating her due process rights.

3. **Pattern of Misconduct**:
   - These incidents demonstrate **Wilkey's** deliberate and repeated abuse, aimed at destabilizing the Plaintiff financially, emotionally, and legally.

4. **Targeted Harassment Through Child Abuse Allegations**:
   - DSS, along with **Wilkey**, engaged in a coordinated effort to harass the Plaintiff through:
   - **Coercion**: Threatening the Plaintiff with the removal of her children without legal or factual basis.

- o **False Accusations:** Filing multiple reports of alleged child abuse that were either dismissed or unsubstantiated.
- o **Retaliatory Actions:** Exploiting judicial and administrative processes to intimidate and destabilize the Plaintiff financially and emotionally.
- **Emotional and Physical Harm:**
  - o By creating a dependency on an individual who exhibits erratic and violent behavior, the Defendants placed the Plaintiff and her family at significant risk. This not only caused financial instability but also exacerbated the emotional and psychological harm endured by the Plaintiff.
- **Pattern of Abuse and Entrapment:**
  - o The Defendants' actions demonstrate a calculated pattern of entrapment, using financial deprivation, coercion, and systemic harassment to keep the Plaintiff in a cycle of poverty and abuse, further marginalizing her and restricting her ability to seek justice or rebuild her life.

### Injuries

1. **Targeted Harassment and Discrimination:**
   - o Defendants engaged in targeted surveillance, systemic discrimination, and harassment to destabilize the Plaintiff financially and emotionally.
   - o Spartanburg municipalities exploited vulnerabilities within the Plaintiff's family by targeting the child, focusing on those with disabilities or less assertiveness.
   - o Law enforcement subjected the Plaintiff to stalking tactics, contributed to the targeting and harassment, and discriminatory practices, including issuing excessive citations and increasing her insurance premiums, creating undue financial burdens exacerbating my legal struggles and emotional distress.
2. **Social Exclusion and Systemic Injustice:**
   - o The Defendants intentionally criminalized the Plaintiff using fabricated evidence, leveraging her abuser to perpetuate fear and instability. These actions resulted in significant social exclusion and hindered the Plaintiff's ability to participate in economic and political activities.

9. **Impact on Family and Education:**
   - o DSS exploited the Plaintiff's children by using unjust tactics that targeted their vulnerabilities, harming their mental well-being and stability.
   - o The School District failed to prioritize the welfare of the Plaintiff's children, resulting in excessively high fees.
   - o DSS and different tactics were implemented to disrupt access to my education.

10. **Legal Violations:**
   - o The Defendants' actions violate federal law, including 18 U.S.C. § 4 (misprision of felony), which obligates individuals with knowledge of felony misconduct to report it to the appropriate authorities. Their failure to address these abuses perpetuates systemic injustice and infringes on the Plaintiff's constitutional rights.

11. **Discrimination by State Actors:**
   - o Government officials targeted me for exercising my conscience, violate my **1st Amendment** rights.

12. **Violation of 2nd Amendment Rights:**
   - o The Defendants' denial of my concealed carry permit, despite my compliance with all state requirements, constitutes a direct violation of her 2nd Amendment rights. The arbitrary requirement for a "favorable recommendation" from the Spartanburg County Sheriff's Office, without a valid basis or transparent criteria, serves as an undue burden on Plaintiff's right to bear arms for self-defense.

13. **Fourth Amendment: Unlawful Seizure**
   - o Plaintiff was unlawfully arrested for **not having a driver's license** during a traffic stop, despite the lack of evidence suggesting a valid and immediate need for such action. The arrest and subsequent seizure of Plaintiff's license were disproportionate to the circumstances and constituted an abuse of discretion by the arresting officer. Plaintiff asserts that this arrest violated her **Fourth Amendment right** to be free from **unreasonable seizures,** as it lacked proper justification under the circumstances.
   - o Plaintiff was also **unlawfully detained** on two additional occasions for **public disorderly conduct,** despite paying the fine for the initial charge. The repeated

- Judicial officers consistently denied Plaintiff's protective orders and failed to address clear evidence of abuse. For instance, Mark Hayes II reduced charges against her abuser and declined further action, further marginalizing her.

3. **Intentional Infliction of Emotional Distress**:
   - The deliberate creation of circumstances that left you dependent on a violent and controlling individual caused emotional and psychological harm.

4. **Violation of Constitutional Rights**:
   - Actions by DSS and law enforcement deprived you of your right to autonomy and safety, infringing upon your right to due process and equal protection under the law.

5. **Fraudulent Manipulation**:
   - By fabricating charges and creating a dependency, the Defendants exploited your situation for financial and institutional benefits, violating state and federal statutes.

6. **Fraud Upon the Court**:
   - Discrepancies and inaccuracies in court transcripts obstructed justice and violated the Plaintiff's constitutional right to due process.
   - Intentional manipulation of court records, as recognized in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), and *United States v. Throckmorton*, 98 U.S. 61 (1878), constitutes fraud upon the court, undermining judicial integrity and requiring immediate corrective action.

7. **Failure to Accommodate Disabilities**:
   - Federal courts dismissed the Plaintiff's claims without providing reasonable accommodations for her intellectual disability, denying her equal access to justice and violating federal accessibility obligations.

8. **Economic and Emotional Harm**:
   - DSS interference, judicial misconduct, and systemic harassment caused the Plaintiff significant financial and emotional harm, including:
     - Excessive fines, fraudulent claims, and legal expenses.
     - Chronic unemployment due to suspected blacklisting.
     - Emotional distress and mental health conditions, such as Complex PTSD and chronic anxiety, resulting from ongoing threats and abuse.

29

arrests represent a pattern of harassment and systemic targeting by law enforcement.

o During her detention at **Spartanburg Medical Center,** Plaintiff was coerced into invasive procedures, including Forced disrobing. Administration of medication without her consent. These actions further violated Plaintiff's Fourth Amendment protections against unreasonable searches and seizures.

14. **Pattern of Misconduct**

o The repeated arrests and punitive actions, including the arrest for not having a license, demonstrate a systemic pattern of abuse and retaliation by Defendants. These actions were unreasonable, lacked lawful justification, and were intended to harass, intimidate, and financially destabilize Plaintiff. Terry v. Ohio, 392 U.S. 1 (1968).

15. **Fourteenth Amendment: Due Process:**

o The fabricated medical records, false diagnoses, and coercive threats deprived the Plaintiff of her liberty and bodily autonomy without due process of law.

16. **Privacy Rights:**

o The forced removal of clothing in the presence of **Donna L. Hussey** and coerced medication by **Amber Bradley, RN,** violated the Plaintiff's privacy and dignity, constituting cruel and inhumane treatment.

17. **Violation of 13th Amendment Rights:**

o Plaintiff asserts that Defendants' actions created conditions of involuntary servitude in violation of the 13th Amendment. By fabricating charges, imposing financial burdens, and orchestrating the removal of Plaintiff's children without due cause, Defendants forced Plaintiff into a state of dependency and compliance under coercion. These actions reflect systemic exploitation by Defendants, who acted under color of law to subjugate Plaintiff, depriving her of her autonomy and liberty. Such coordinated efforts to exploit Plaintiff's circumstances constitute modern involuntary servitude as prohibited by the 13th Amendment. **United States v. Kozminski (1988),** the Court clarified that the amendment prohibits situations where individuals are compelled to work or comply through physical force, threats, or legal coercion.

31

18. **Entrapment Through State Complicity in Parental Alienation:**
   o Plaintiff asserts that Defendants' refusal to issue protection orders against **Wilkey** and their inaction in the face of clear evidence of parental alienation enabled a deliberate scheme of entrapment. By facilitating **Wilkey's abuse and manipulation**, Defendants created conditions in which Plaintiff was forced into repeated legal and financial hardship, violating her constitutional rights under the 5th and 14th Amendments. These actions reflect a coordinated effort to entrap Plaintiff in a cycle of dependency, emotional harm, and systemic targeting, depriving her of her rights and liberties. **Jacobson v. United States, 503 U.S. 540 (1992).**

## DAMAGES

As a result of Defendants' actions:

1. The United States suffered financial losses due to improper federal disbursements.
2. The Plaintiff endured emotional distress, financial harm, and deprivation of constitutional rights.

## RELIEF REQUESTED

**WHEREFORE, the Plaintiff requests:**

1. **Judgment for Treble Damages and Civil Penalties:**
   o A judgment in favor of the United States for treble damages and civil penalties under the False Claims Act and RICO statutes, as applicable.
2. **Injunctive Relief:**
   o Immediate injunctive relief to prevent further retaliation, fraud, and systemic targeting by the Defendants.
3. **Compensation for Emotional and Financial Harm:**
   o Adequate compensation for the Plaintiff's emotional distress, financial harm, and deprivation of constitutional rights.
4. **Attorneys' Fees and Costs:**
   o Reimbursement of attorneys' fees, court costs, and related expenses incurred by the Plaintiff in pursuit of justice.
5. **Additional Relief:**
   o Any additional relief deemed just, equitable, and proper by the Court.

32

6. **Request for Return to Source Settlement via 1099 OID Filing and Compensation for Financial Misconduct:**
   - The Plaintiff requests that all officials involved in her case file Federal Tax Form 1099 OID for the eligible issues, facilitating a return to source for full settlement and closure of escrow tied to Treasury Direct Social Security #.
   - Failure to comply with the required filing constitutes financial misconduct, as these officials knowingly withhold assets belonging to the Plaintiff. Their actions create undue hardship and perpetuate the Plaintiff's state of poverty.

7. **Enforcement of Federal Tax Liability:**
   - Recognizing that withholding funds constitutes a federal tax liability, the Plaintiff requests enforcement of obligations as holder-in-due-course, compelling the responsible parties to settle their liability and return the value to its rightful source, ensuring compliance with *United States v. Mitchell,* 463 U.S. 206 (1983).

8. **Access to Property and Assets:**
   - The Plaintiff seeks immediate access to her rightful property, including her certificate of live birth and commissary-held assets, which are tax-exempt and integral to her fundamental property rights as recognized in *Hodel v. Irving,* 481 U.S. 704 (1987).

9. **Remedy for Unjust Enrichment and Misuse of Authority:**
   - The Plaintiff seeks a remedy for unjust enrichment and abuse of authority by public officials, consistent with principles established in *Ford v. Hutson,* 276 S.E.2d 776 (S.C. 1981) and *Astrue v. Capato,* 566 U.S. 541 (2012), ensuring government actions align with fair administrative practices.

### DEMAND FOR JURY TRIAL

The Plaintiff demands a jury trial on all issues so triable.

*Latasha M. Boyd*
Latasha Monique Boyd
c/o 115 Gap Creek Rd. Apt 1G
Duncan, South Carolina, [29334]
864-205-3776
Tashasfamily2018@gmail.com
11/29/2024